**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| CYNTHIA HYLAND, ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-1273 |
| ) | |
| RAYTHEON COMPANY, <u>et al.</u>, ) | |
| ) | |
|      Defendants. ) | |

**<u>MEMORANDUM OPINION</u>**

This matter comes before the Court on Defendants' Motion for Summary Judgment and Defendants' Motion to Strike Plaintiff's Demand for a Jury Trial. Plaintiff filed suit against Defendants alleging gender discrimination and hostile work environment based on gender, 42 U.S.C. §§ 1981a(b)(1), 2000e-2(a)(1) (2000), and wrongful discharge, Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley), Pub. L. No. 107-204, § 806, 116 Stat. 745 (to be codified as 18 U.S.C. § 1514A).

Plaintiff is a resident of Fairfax, Virginia, and is a citizen of the Commonwealth of Virginia. Defendant Raytheon Company (Raytheon) is a Delaware corporation whose principal place of business is in the Commonwealth of Massachusetts. Co-defendant Raytheon Technical Services Company (RTSC), whose principal office is in the Commonwealth of Virginia, is a wholly

owned subsidiary of Raytheon.

Plaintiff joined Raytheon in December 1997 when Raytheon acquired the defense business of Hughes Electronics Corporation. In January 1999 Plaintiff joined RTSC as Vice President for Contracts. Plaintiff continued in that position until January 2000 when she was named Vice President and General Manager of Installation and Integration Services (IIS). This was Plaintiff's first experience as the head of an RTSC division. As Vice President and General Manager of IIS, Plaintiff had responsibility for IIS profits, losses, financial accounting, and financial reporting.

While Plaintiff managed IIS from January 2000 to June 2002, IIS suffered severe losses. One of the most important contracts held by IIS in January 2000 was the Federal Aviation Administration's (FAA) Technical Support Services Contract II (TSSC II). TSSC II was the largest program in IIS and accounted for nearly half of IIS annual revenue. Approximately 600 full-time RTSC employees were dedicated to TSSC II. In 2001 the FAA announced a re-compete for a new version of TSSC II called Technical Support Services Contract III (TSSC III). TSSC III was estimated to be worth more than $1 billion.

Even though the TSSC III bid made by RTSC was the lowest received by the FAA, RTSC was not awarded TSSC III. Despite a later RTSC protest, the FAA sustained its initial decision to

2

award TSSC III to a competitor of RTSC. As a result, several hundred RTSC employees lost their jobs and IIS was forced to close at least six of its eleven regional offices. In a RTSC internal report detailing the failure of IIS to retain TSSC III, Plaintiff stated that the IIS failure to get TSSC III was due to her own lack of insight regarding potential union issues, the strategy of RTSC competitors, and the relationships between RTSC competitors and the FAA.

In early 2002 IIS competed for the Explosive Detection Systems Contract (EDSC) offered by the Transportation Security Administration (TSA). The winner of EDSC was to install, maintain, and train TSA personnel on the use of explosive detection systems at 459 U.S. airports. Like TSSC III, EDSC was estimated to be worth more than $1 billion. Despite the fact that under an earlier government contract IIS was already installing explosive detection systems at certain U.S. airports, the TSA rejected the RTSC bid for EDSC. The TSA determined that the RTSC bid was outside the competitive range, meaning it was not even going to be evaluated against competing proposals. Plaintiff refused to accept responsibility for this IIS failure despite the RTSC President's conclusion that, as the IIS EDSC proposal manager, Plaintiff was ultimately responsible for the TSA's rejection of the IIS EDSC bid.

In June 2002 RTSC consolidated its twelve divisions into six. One of the newly created RTSC divisions was System and Product Support Services (SPSS). SPSS was created by combining three of the former RTSC divisions: IIS, Integrated Logistic Services, and Commercial Services. Despite failures suffered by IIS under Plaintiff's management, the RTSC President named Plaintiff Vice President and General Manager of SPSS. Shortly thereafter, the RTSC President asked Plaintiff to return to her former position as RTSC Vice President for Contracts. Plaintiff requested to maintain her position atop SPSS, and the RTSC President consented.

In August 2002 Defendants created a panel of senior executives to review employees in leadership positions at RTSC. This review panel included the Raytheon CEO, Raytheon President, RTSC President, and RTSC Vice President of Human Resources. The review panel reached the following conclusion after examining Plaintiff's performance at RTSC in the positions of Vice President and General Manager of IIS and Vice President and General Manager of SPSS.

> The most critical individual we need to address is Cynthia Hyland. We talked about several actions: First, I think we all agree that we want to help her and see her succeed. ... [The RTSC President needs] to continue to work with [Cynthia Hyland] to help her understand where she needs to improve. Let's do all we can, but let's not drag it on too long if she does not quickly respond.

Miller Dep. 81:2-6 & Ex. 5, July 15, 2005. Plaintiff also

4

received poor reviews from the Beacon Group, an independent consulting firm hired by RTSC to assess the recent failures of IIS. The Beacon Group issued a report detailing the results of its investigation. The Beacon Group report stressed that the recent failures of IIS to obtain TSSC III and EDSC were in part due to poorly written proposals, executives writing large portions of those proposals, poor relationships with subcontractors, failure to listen to customer requirements, and complacency on re-competes.

Pursuant to the instructions of the RTSC review panel, the RTSC President tried to discuss with Plaintiff the review panel's view of her performance and the results of the Beacon Group report. Plaintiff, however, dismissed the results of the Beacon Group report and questioned the review panel's determination that she needed to improve her performance. After subsequent discussions between the members of the review panel, they decided that Plaintiff had failed to put forth a reasonable effort to make necessary improvements. As a result, Plaintiff was terminated on July 23, 2003.

In the positions of Vice President and General Manager of IIS and Vice President and General Manager of SPSS, Plaintiff had a strong interest in minimizing overhead costs allocated to IIS and SPSS. While in those positions, Plaintiff frequently raised concerns regarding the cost allocation methodology used by

Defendants to allocate approximately $60 million in overhead costs to Defendants' various divisions and programs. Plaintiff believed that the divisions she managed bore a larger burden of those costs than warranted. For example, Plaintiff was particularly sensitive to the overhead costs allocated to the IIS TSSC III proposal due to the impact the overhead cost allocations had on the competitiveness of that proposal.

On several occasions, Plaintiff told senior executives at Raytheon and RTSC that she believed Defendants' cost allocation methodology resulted in the improper division of costs among Defendants' various divisions and programs. Plaintiff asked senior executives of Raytheon and RTSC if the cost allocation methodology violated federal cost accounting standards. See 48 C.F.R. § 9904 (2004). The RTSC President and RTSC Chief Financial Officer gave Plaintiff several assurances that Defendants' cost allocation methodology was consistent with federal cost accounting standards and federal securities laws.

First, the RTSC President and the RTSC Chief Financial Officer told Plaintiff that the Defendants' cost allocation methodology had been approved of by RTSC internal auditors. Second, the RTSC President told Plaintiff that Defendants' cost allocation methodology was consistent with Defendants' disclosure statements. Third, the RTSC President explained to Plaintiff that these disclosure statements were reviewed and audited by the

Defense Contract Audit Agency and the Defense Contract Management Agency. Pursuant to these assurances that Defendants' cost allocation methodology had been fully disclosed to the government and was consistent with federal cost accounting standards and federal securities laws, the RTSC President requested that Plaintiff stop complaining about the amount of overhead costs allocated to her divisions. Plaintiff, despite any evidence or belief that the assurances given to her by the RTSC President and the RTSC Chief Financial Officer were untruthful, continued to make such complaints until she was terminated in July 2003.

Pursuant to Rule 56(c), this Court must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, this Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at

248. "Rule 56(e) requires the nonmoving party to go beyond the

pleadings and by [his] own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for

trial.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

In order to establish a prima facie case of gender

discrimination Plaintiff must prove that:

> (1) she is a member of a protected class; (2) she
> suffered adverse employment action; (3) she was
> performing her job duties at a level that met her
> employer's legitimate expectations at the time of the
> adverse employment action; and (4) the position
> remained open or was filled by similarly qualified
> applicants outside the protected class.

<u>Hill</u>, 354 F.3d at 285. While Plaintiff is clearly within a

protected class and suffered an adverse employment action,

Plaintiff has not presented any evidence to show that she

performed her duties at RTSC at a level that met Defendants'

legitimate expectations. Plaintiff was directly responsible for

the loss of two government contracts worth more than $1 billion

each, received poor reviews by the RTSC review panel, and failed

to make the improvements specified by the review panel via the

RTSC President.

Plaintiff has failed to present any evidence to show that

Defendants' stated reason for her dismissal, lost contracts and

failure to make desired improvements, was mere pretext for gender

discrimination. <u>EEOC v. Clay Printing Co.</u>, 955 F.2d 936, 940–41 (4th Cir. 1992). Defendants have stated that Plaintiff was terminated due to the failure of IIS to obtain valuable government contracts and Plaintiff's failure to make improvements requested by the review panel via the RTSC President.

To support a claim of hostile work environment based on gender, Plaintiff must present facts sufficient to show that "(1) she experienced unwelcome harassment; (2) the harassment was based on gender ...; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2002).

Plaintiff, has not presented any evidence to meet the first element of a claim of hostile work environment. Plaintiff's allegations are limited to actions of the RTSC President. That is he glared at Plaintiff across the table at meetings, whispered to his male colleagues, and frequently visited male colleagues in their offices and did not visit her office. Such actions, if true, do not support a finding that they were based in any way on gender. Plaintiff has presented no evidence of any action taken against her because she was a woman. Also a perceived glare by someone or the failure to visit someone's office is not conduct so severe to create an abusive atmosphere.

As to Plaintiff's claim of wrongful discharge in violation of Sarbanes-Oxley § 806 (hereinafter 18 U.S.C.A. § 1514A (2005)), summary judgment should be granted to Defendants. Sarbanes-Oxley is a wide reaching reform of financial reporting and auditing requirements for publicly traded companies. In particular, Sarbanes-Oxley provides protection for corporate whistleblowers. See 18 U.S.C.A § 1514A. Sarbanes-Oxley provides that publicly traded companies cannot discharge employees for providing information to the government or their supervisors regarding violations of federal securities law. Id. In particular, 18 U.S.C.A. § 1514A provides that

> [n]o [publicly traded company] ... may discharge ... [an] employee ... because of any lawful act done by the employee to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of [federal securities laws], or any provision of [f]ederal law relating to fraud against shareholders, when the information is provided to or the investigation is conducted by a [f]ederal regulatory or law enforcement agency; any Member of Congress or any committee of Congress; or a person with supervisory authority over the employee.

Id. When a plaintiff files a claim in federal court alleging wrongful discharge in violation of 18 U.S.C.A. § 1514A, the Plaintiff must make a prima facie showing that any behavior described in 18 U.S.C.A. § 1514A was a contributing factor in the unfavorable personnel action alleged in the complaint. 49 U.S.C. § 42121(b)(2)(B)(i).

While 49 U.S.C. § 42121(b)(2)(B)(i) does not appear to state a clearly defined legal test, the Court finds that Plaintiff must, at a minimum, show the following to comply with its terms. First, 49 U.S.C. § 42121(b)(2)(B)(i) clearly requires Plaintiff to show that she engaged in protected activity under 18 U.S.C.A. § 1514A (protected activity). 49 U.S.C. § 42121(b)(2)(B)(i). Second, Plaintiff must show that the Defendants knew of the protected activity because Plaintiff cannot show that the protected activity "was a contributing factor in the unfavorable personnel action" if Defendants had no knowledge of the protected activity. Id. Third, Plaintiff must show that she did in fact suffer an unfavorable personnel action. Id. Fourth, Plaintiff must show that circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable personnel action. Id., compare Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365, 1375 (N.D. Ga. 2004) (using the same four factor test to determine whether a plaintiff alleging wrongful discharge under 18 U.S.C.A. § 1514A could survive a motion for summary judgment); Getman v. Sw. Sec., Inc., 2003-SOX-8 (July 29, 2005) (using the same four factor test in dismissing a plaintiff's claim of wrongful discharge under 18 U.S.C.A. § 1514A); 29 C.F.R. § 1980.104 (2004) (Department of Labor regulation adopting the same four factor test). If Plaintiff can make a prima facie case of wrongful discharge in violation of 18 U.S.C.A. § 1514A,

Defendants' can avoid liability if they can demonstrate by clear and convincing evidence that they would have terminated Plaintiff even if she had not engaged in protected activity. 49 U.S.C. § 42121(b)(2)(B)(iv).

Sarbanes-Oxley only protects employees who provide information regarding corporate behavior that they reasonably believe violates federal securities laws "or any provision of [f]ederal law relating to fraud against shareholders." 18 U.S.C.A. § 1514A(a)(1). Thus, a plaintiff must reasonably believe that the information forming the basis of the alleged protected activity shows, on behalf of a publicly traded company, a violation of federal securities laws or fraud against the shareholders. While Sarbanes-Oxley does not explicitly define "reasonable belief," the legislative history of Sarbanes-Oxley provides guidance. The reasonable belief requirement of 18 U.S.C.A. § 1514A(a)(1) "is intended to impose the normal reasonable person standard ..., [t]he threshold ... to include all good faith and reasonable reporting of fraud." 148 Cong. Rec. S7420 (daily ed. July 26, 2002) (statement of Sen. Leahy).

Plaintiff has not shown that she engaged in protected activity because she has failed to present any evidence that she reasonably believed Defendants' cost allocation methodology to be in violation of federal securities laws "or any provision of [f]ederal law relating to fraud against shareholders." 18

12

U.S.C.A. § 1514A(a)(1). Plaintiff clearly disagreed with the amount of overhead costs allocated to IIS and SPSS, but there is no evidence that the Defendants' cost allocation methodology violated federal securities laws or defrauded shareholders, or that she believed Defendants' cost allocation methodology violated federal securities laws.

Plaintiff's own actions show that she did not believe that Defendants' cost allocation methodology violated federal law. Plaintiff only complained about the cost allocations to individual projects within IIS and SPSS. Plaintiff never reported her concerns to the Securities Exchange Commission (SEC), she never contacted Raytheon's anonymous SEC compliance hotline, she never told the RTSC President that she believed Defendants' cost allocation methodology to be fraudulent, and Plaintiff admits that she lacked sufficient information to know whether or not the cost allocation methodology complied with federal securities laws.

All that Plaintiff did was ask senior executives at Raytheon and RTSC whether the cost allocation methodology complied with federal cost accounting standards. Defendants promptly and adequately answered Plaintiff's question in the negative, and provided Plaintiff with ample assurances that the disputed cost allocation methodology complied with federal law and had been disclosed to, and reviewed and audited by the government. Upon

13

receiving this information Plaintiff continued to question Defendants' cost allocation methodology without a good faith belief that the assurances provided to her by the RTSC President and RTSC Chief Financial Officer were untruthful. The Plaintiff did not engage in a protected act because Plaintiff did not reasonably believe Defendants' cost allocation methodology to be a violation of federal securities laws.

Plaintiff also fails to meet the second prong of a prima facie case of wrongful discharge under 18 U.S.C.A. § 1514A. For the reasons stated above, Plaintiff cannot show by a preponderance of the evidence that Defendants knew that Plaintiff's complaints regarding Defendants' cost allocation methodology was protected activity. Plaintiff simply asked Defendants whether the cost allocation methodology was consistent with federal cost accounting standards. The RTSC President and RTSC Chief Financial Officer promptly answered Plaintiff's question, and Plaintiff never contested their response.

Plaintiff also fails to meet the fourth prong of a prima facie case of wrongful discharge under 18 U.S.C.A. § 1514A. This Court has found that Plaintiff did not engage in a protected activity. Therefore, this prong is not satisfied from the outset. However, even if this Court were to find that Plaintiff engaged in a protected activity, Defendants have shown by a clear and convincing evidence that Plaintiff was terminated because of the

14

substantial failures of IIS and SPSS under her management and Plaintiff's inability to make changes suggested by the review panel via the RTSC President. There is significant evidence of efforts by the RTSC President and others to help Plaintiff make the changes necessary to maintain her position as Vice President and General Manager of SPSS. Plaintiff, however, has presented no evidence to challenge Defendants' stated reason for Plaintiff's termination, much less find that Defendants' stated reason for termination is mere pretext in an effort to punish Plaintiff for engaging in protected activity.

An appropriate Order shall issue.

/s/
_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October 18, 2005